IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIRSTEN G., | ) |
|       Plaintiff, | ) |
| vs. | )    Case No. 4:21-CV-00526-JFJ |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Kirsten G. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

I.  **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 36-year-old female, applied for Title II disability insurance benefits on September 27, 2018, alleging a disability onset date of May 1, 2014, later amended to February 1, 2017. R. 15, 401-407, 513. Plaintiff claimed she was unable to work due to conditions including major depressive disorder, borderline personality disorder, post-traumatic stress disorder, anxiety, and narcolepsy. R. 545. Plaintiff's claim for benefits was denied initially on March 7, 2019, and on reconsideration on June 6, 2019. R. 227-256. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted hearings on March 3, 2020, August 6, 2020, and January 26, 2021. R. 37-52, 173-192, 193-226. The ALJ issued a decision on March 3, 2021, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 15-30. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's date last insured is December 31, 2024. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 1, 2017. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder; borderline personality disorder; post-traumatic stress disorder ("PTSD"); generalized anxiety disorder; and polysubstance use disorder (long-term remission). R. 18. The ALJ found her left lower extremity impairment to be medically determinable impairment but not durational. *Id.* As for Plaintiff's history of narcolepsy, the ALJ found insufficient medical evidence to document the severity of symptoms or responses to treatment. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 18-19. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four areas of (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations as follows:

> The claimant can understand, remember, and carry out simple one, two and three step tasks as well as detailed tasks, but not complex tasks. Job duties should not require public interaction. The claimant could tolerate occasional interaction with coworkers. Job duties should not require a forced pace (like an assembly line pace).

R. 20. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 28. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled work, such as Small Product Assembler, Packer/inspector,

and Housekeeper. R. 29. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), except where it was outside the scope of the DOT and based on the VE's experience. *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issue**

Plaintiff raises one point of error in her challenge to the denial of benefits: the ALJ committed reversible error by failing to incorporate into the RFC all limitations contained in the medical expert opinion of Dan Hamill, Ph.D., despite finding the opinion persuasive. ECF No. 14.

**IV.    Analysis – ALJ Adequately Accounted for Dr. Hamill's Mental Limitations**

Plaintiff argues the ALJ failed to account for Dr. Hamill's mental restrictions in determining the RFC, despite finding the opinion persuasive. *See* R. 1251-58 (Dr. Hamill's medical interrogatory responses).

In this case, Dr. Hamill responded to medical interrogatories pertaining to Plaintiff's mental impairments on August 28 and 31, 2020. R. 1251-58. Dr. Hamill found Plaintiff moderately limited in all four areas of work-related mental functioning. R. 1252. As support, Dr. Hamill explained that Plaintiff's attention to complex tasks was contraindicated by PTSD (despite a bachelor's degree), PTSD was inconsistent with working consistently with the general public, and generalized anxiety impeded the ability to maintain assembly-line pace or to adjust to frequent changes. *Id.* Based on Plaintiff's impairments, Dr. Hamill determined Plaintiff had the following work-related functional limitations: (1) 1-2-3 step and detailed (but not complex) tasks, with stress limited by generalized anxiety disorder; (2) no interaction with the general public and occasional

interaction with co-workers due to PTSD and borderline personality; and (3) no forced pace (assembly line) pressures due to generalized anxiety disorder.  R. 1255.

Dr. Hamill further found that Plaintiff had no restriction in ability to understand, remember, or carry out simple instructions; moderate restriction in the ability to make judgments on simple work-related decisions; and marked restriction in the abilities to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions.  R. 1256.  As support, Dr. Hamill explained Plaintiff's "chronicity of concerns including PTSD (18F2, 14F4) contraindicate the stresses of complex work and frequent decision-making."  *Id.*  Finally, Dr. Hamill found that Plaintiff would have marked restriction in ability to interact appropriately with the public; mild restriction in ability to interact appropriately with supervisors; and moderate restriction in ability to interact appropriately with co-workers and respond appropriately to usual work situations and to changes in a routine work setting.  R. 1257.  As support, Dr. Hamill explained that borderline personality disorder "precludes successful ongoing interaction with the general public."  *Id.*

The ALJ summarized Dr. Hamill's opinion.  R. 24.  The ALJ found Dr. Hamill's opinion to be persuasive based on its consistency with Dr. Hamill's thorough review of the record, in which Dr. Hamill pointed to specific medical evidence to support his opinion.  R. 28.  The ALJ further found Dr. Hamill to be an expert in the field of psychology and that he used his education, training, and experience to render an opinion.  *Id.*  Finally, the ALJ found Dr. Hamill's opinion consistent with Plaintiff's mental status examinations at medication management appointments, which showed she had "good attention, concentration, and insight; her memory [was] grossly intact; intelligen[ce] appears average; and cooperative."  *Id.* (citing R. 1143-1157).

Plaintiff argues the ALJ's RFC was flawed, because it failed to incorporate two specific opinions from Dr. Hamill's report: (1) Plaintiff had moderate limitations in ability to respond appropriately to usual work situations and changes in a routine work setting (R. 1257); and (2) Plaintiff had moderate limitation in the ability to make judgments on simple work-related decisions (R. 1256),

### A. Ability to Respond Appropriately to Usual Work Situations and Changes in Routine Work Setting

Plaintiff argues the ALJ failed to consider Dr. Hamill's opinion that Plaintiff had moderate limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting. R. 1257. Plaintiff further points out that Dr. Hamill opined Plaintiff's generalized anxiety disorder impeded her ability to "adjust to frequent changes." R. 1252. Plaintiff argues the ALJ set forth no limitations to accommodate these functional deficits, despite finding Dr. Hamill's opinion persuasive. Plaintiff points to no other evidence to suggest the RFC is unsupported regarding Plaintiff's ability to adapt to routine work changes.

Plaintiff's argument is unpersuasive. The ALJ appropriately considered Plaintiff's ability to respond to usual work situations and adapt to changes in a routine work setting. Dr. Hamill's opinion of moderate limitations is consistent with the ALJ's finding that Plaintiff had moderate limitations in all four of the "paragraph B" areas of functioning. R. 19. In considering the "paragraph C" criteria for mental disorders, the ALJ further found that, given Plaintiff's treatment notes, she "had more than minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life." *Id.* In support, the ALJ noted that Plaintiff had stated in therapy sessions that she was maintaining improvements in difficult situations, including her grandmother's passing; she had adequately handled her father's stroke and her regulation of emotions was improved; she had broken up with her boyfriend and was adequately handling it;

7

she had moved back in with her parents; and she was handling the ending of another relationship well. *Id.* (citing R. 1006, 1012, 1014-1015, 1045).

The ALJ aligned the RFC with Dr. Hamill's specific opinions regarding what Plaintiff could do in a work setting on a sustained basis, adopting those opinions nearly verbatim into the RFC. R. 20, 1255. The ALJ accommodated Plaintiff's moderate mental limitations by limiting her to unskilled work, which requires only that a claimant "deal with changes in a routine work setting," "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions," and "respond appropriately to supervision, coworkers and work situations." SSA Program Operations Manual System ("POMS") DI § 25020.010(A)(3), 2001 WL 1933437 (describing mental demands of unskilled work).

Moreover, Dr. Hamill's check-box opinions regarding the severity of her limitations correspond to the specific written opinions regarding how those limitations would translate to the work setting. A moderate limitation does not translate to a complete inability to function in this area, but instead translates to "fair" functioning on a sustained basis. R. 1256-1257. Plaintiff points to no part of the record to suggest that Dr. Hamill's opinions were inconsistent with the RFC. The ALJ incorporated Dr. Hamill's limitations by stating in the RFC how Plaintiff was limited in her ability to perform work-related activities, which is an acceptable approach. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (finding ALJ was not required to expressly repeat moderate mental limitations assessed by doctor in determining RFC, where ALJ had incorporated those moderate limitations through statement of ability to perform work-related activities); *Hernandez v. Colvin*, 567 F. App'x 576, 582-83 (10th Cir. 2014) (acknowledging that mental limitations may in some circumstances be adequately accommodated by an RFC limitation to unskilled work).

8

The ALJ cited to numerous records supporting the RFC regarding adaptability. In the functional area of "adapting and managing oneself," both Dr. Hamill and the ALJ found a "moderate" limitation. R. 19, 1252. The ALJ explained that Plaintiff was able to go out alone, "indicating she could be aware of normal hazards and take appropriate precautions," even though she needed reminders for taking medications. R. 19 (citing R. 588, 589). The ALJ further explained that Plaintiff was able to pay bills, handle a savings account, and use a check book/money order, "reflecting she could make plans for herself independently of others." *Id.* (citing R. 589). Finally, the ALJ noted Plaintiff's "mental status examinations consistently noted she was well-groomed, indicating she could maintain appropriate personal hygiene." *Id.* (citing R. 1144, 1147, 1150, 1153). In other mental functioning areas, the ALJ noted that, for example, Plaintiff went out with friends on St. Patrick's Day and went to music shows with friends, which indicated "she could keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness"; Plaintiff "was doing work for her friend from March 2017 to July 2018 indicating she could initiate and perform task[s] that she understood and knew how to do"; and Plaintiff could drive a car by herself, "indicating she could ignore or avoid distractions while completing tasks." R. 19 (citing R. 601-602, 978, 1052). Plaintiff completely ignores the ALJ's extensive discussion of her abilities regarding responding to usual work situations and adapting to changes in a routine work setting.

Plaintiff relies on an unpublished Tenth Circuit opinion for the proposition that an RFC limitation involving complexity or pace is insufficient to account for a medical opinion that the claimant has moderate mental limitations in the ability to respond appropriately to usual work situations and changes in routine work settings. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019). Plaintiff's reliance on *Parker* is misplaced. In *Parker*, the panel explained

9

the ALJ must typically state how a work-related limitation adequately accounts for mental limitations reflected in a mental opinion, unless the connection is obvious. *Id.* at 616. Here, the connection was obvious, and no further explanation was required. Dr. Hamill's opinion included work-related restrictions to account for Plaintiff's moderate limits in ability to adapt and impediment in adjusting to frequent changes. Specifically, Dr. Hamill opined Plaintiff could perform work with limits of (1) 1-2-3 step and detailed (but not complex) tasks, (2) no interaction with the general public and occasional interaction with co-workers, and (3) no forced pace (assembly line) pressures. R. 1255. The ALJ adopted these limits into the RFC and explained his reasoning, which sufficiently accounted for Plaintiff's mental limitations. R. 18-20.

### B.     Ability to Make Judgments on Simple Work-Related Decisions

Plaintiff also argues the ALJ's RFC failed to incorporate Dr. Hamill's opinion that Plaintiff had moderate limitations in the ability to make judgments on simple work-related decisions. R. 1256. Plaintiff contends the unskilled jobs provided at step five require an ability to make simple work-related decisions, and Dr. Hamill's opinion is inconsistent with such ability.

Again, Plaintiff's argument is unpersuasive. Dr. Hamill explained his "moderate" assessment in this regard, stating that Plaintiff's "chronicity of concerns including PTSD (18F2, 14F4) contraindicate the stresses of complex work and frequent decision-making." R. 1256. Dr. Hamill's opinion regarding her work-related functionality included (1) that her work be limited to 1-2-3 step and detailed tasks, but not complex tasks; and (2) that her work not require a forced or assembly line pace. R. 1255. The ALJ adopted these limitations into the RFC. R. 20.

Plaintiff appears to argue that Dr. Hamill's "moderate" limitation translated to a complete inability to make judgments on simple work-related decisions. However, Dr. Hamill's check-box answer indicated he thought Plaintiff had "fair" ability to make judgments on simple work-related decisions on a sustained basis. R. 1256. Plaintiff fails to show that she was more limited than Dr.

10

Hamill opined, or that the RFC inadequately accounted for Dr. Hamill's opinion. As explained above, an ALJ need not include verbatim a physician's "moderate" mental limitations in the RFC, where the ALJ incorporated those moderate limitations by stating Plaintiff's ability to perform work-related activities. *See Smith*, 821 F.3d at 1269; *Hernandez*, 567 F. App'x at 582-83. The ALJ limited Plaintiff to unskilled work, which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). No additional RFC limitations were necessary to accommodate the "moderate" limitation Dr. Hamill identified.

The undersigned identifies no error in the ALJ's analysis of Plaintiff's RFC, including no contradictions with or failures to consider Dr. Hamill's opinions. The ALJ considered all evidence in the record to determine Plaintiff's RFC and demonstrated that he relied on both Dr. Hamill's opinion and other evidence to elicit a clear picture of Plaintiff's potential to perform work. As a result, the ALJ was not required to eliminate any of the step-five jobs from consideration based on their mental requirements. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 6th day of March, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**